Eli RAITPORT

v.

GENERAL MOTORS CORPORATION, Chrysler Corporation, Ford Motor Company and American Motors Corporation.

No. 73–2847.

United States District Court, E. D. Pennsylvania.

May 18, 1978.

Eli Raitport, pro se.

W. Bradley Ward, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for General Motors.

Edward J. McIntyre, Dechert, Price & Rhoads, Philadelphia, Pa., for Ford Motor.

Ward T. Williams, Drinker, Biddle & Reath, Philadelphia, Pa., for Chrysler & American Motors.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In November, 1973, plaintiff, *pro se*, filed a "Petition" with the United States District Court for the District of Columbia seeking to enjoin defendants, General Motors Corporation ("GM"), Chrysler Corporation ("Chrysler"), Ford Motor Company ("Ford") and American Motors Corporation ("American Motors") from (1) refusing to deal with new companies and consequently restraining new companies from entering the automotive components market; (2) raising prices on cars (and other products) without having exhausted opportunities to decrease manufacturing costs; and (3) considering issues other than merits of quality, price, capability and citizenship in selecting suppliers.

On November 30, 1973, Judge Hart transferred this case to the Eastern District of Pennsylvania. On February 13, 1974, plaintiff filed an "Application to Amend the Complaint" in which he alleged that the defendants restricted him from entering into the automotive engineering field, and from freely enjoying and practicing his trade. All defendants have answered the amended complaint.

Plaintiff has alleged violations of the Civil Rights Act, 42 U.S.C. § 1985(3) and the Sherman Act, 15 U.S.C. §§ 1, 2 and 3. He contends that he is entitled to relief because: (1) the defendants received and defrauded him and induced him to spend his time and resources in developing products and endeavoring to sell them; (2) he exhibited prototypes showing that his products were safer and considerably less costly than those presently used by the defendants, which would result in a saving to each defendant of several million dollars per year; and (3) since February, 1973, he has suffered $90,000,000 per year in lost profits due to defendants' refusal to deal. At a hearing in connection with this matter the parties agreed to accept testimony presented by the plaintiff before Judge Van Artsdalen in *Raitport v. General Motors,* No. 73–2054 (E.D.Pa., filed May 28, 1975), in which plaintiff alleged *inter alia* that two of the four defendants in this case (GM and Chrysler) refusal to deal violated §§ 1983 and 1985(3) of the Civil Rights Act and §§ 1, 2 and 3 of the Sherman Act.

### Res Judicata

In memoranda and orders dated May 28, 1975 and November 12, 1975, Judge Van Artsdalen granted defendants' motions for summary judgment on the ground that plaintiff had failed to state a valid claim for relief under either the Sherman or Civil Rights Acts. Thus, with respect to plaintiff's claims against GM and Chrysler, he is estopped from relitigating these same claims under the doctrine of res judicata. Accordingly, summary judgment will be entered in favor of these defendants on this ground.

The doctrine of res judicata is intended as a bar to repetitious litigation.

*Cramer v. General Telephone & Electronics,* 443 F.Supp. 516 (E.D.Pa.1977). Res judicata is based on the proposition that a party who has had one fair and full opportunity to prove a claim and has failed in that effort, should not be permitted to go to trial on the merits of that claim a second time. *Bruszewski v. United States,* 181 F.2d 419, 421 (3d Cir. 1950). As the Third Circuit stated in *Hubicki v. ACF Industries, Inc.,* 484 F.2d 519, 524 (3d Cir. 1973):

> The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." [1]

*See also, Gulf Oil Corp. v. Federal Power Commission,* 563 F.2d 588, 602 (3d Cir. 1977); *Donegal Steel Foundry Co. v. Accurate Products Co.,* 516 F.2d 583, 587 (3d Cir. 1977); *Sworob v. Harris,* 450 F.Supp. 96 (E.D.Pa.1978).

Plaintiff has had a full and fair opportunity to litigate these same claims with respect to GM and Chrysler before Judge Van Artsdalen.[2] In fact, "possibly in an overabundance of caution", Judge Van Artsdalen withheld entering summary judgment on plaintiff's antitrust allegations for over six months to allow the plaintiff an additional opportunity to develop and present competent and credible factual evidence in support of his claims. *Raitport v. General Motors Corporation,* No. 73–2054 at 13 (E.D.Pa., filed May 28, 1975). Only after plaintiff failed to present any such evidence did Judge Van Artsdalen grant defendants' motions for summary judgment. We hold that plaintiff is barred from relitigating these claims, or any claims which he should have raised in that action, against GM and Chrysler in this proceeding. He is bound by

the judgment of the earlier case. 1B *Moore's Federal Practice* ¶ 0.405.

*Failure to State A Claim*

In connection with defendants' motion for summary judgment, it is clear that the moving party has the burden of demonstrating that there is no genuine issue of material fact. *Fairbanks, Morse & Co. v. Consolidated Fisheries Co.,* 190 F.2d 817, 824 (3d Cir. 1951), quoted with approval in *Ettinger v. Johnson,* 556 F.2d 692, 696 (3d Cir. 1977). Moreover, in considering the motion for summary judgment, the Court must view the evidence in a light most favorable to the party opposing the motion. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

A. *42 U.S.C. § 1983*

Although plaintiff has not alleged a violation of 42 U.S.C. § 1983, inasmuch as this is a *pro se* complaint, we have considered whether he has stated a cause of action pursuant to this section. 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Supreme Court has repeatedly held that the Fourteenth Amendment applies only to governmental and not private action. As stated by the Court in *District of Columbia v. Carter,* 409 U.S. 418, 424–25, 93 S.Ct. 602, 606, 34 L.Ed.2d 613 (1973):

> Like the Amendment upon which it is based, § 1983 is of only limited scope.

---

**1.** *Quoting Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

**2.** The law is clear that summary judgment is a final judgment on the merits sufficient to raise

the defense of res judicata in a subsequent action. *Hubicki v. ACF Industries, Inc.,* 484 F.2d at 524.

The statute deals only with those deprivations of rights that are accomplished under the color of the law of "any State or Territory." It does not reach purely private conduct . . . ."

*See also Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 172, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 169, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Gibbs v. Titelman,* 502 F.2d 1107, 1110 (3d Cir. 1974), *cert. denied,* 419 U.S. 1039, 42 L.Ed.2d 316. It is not alleged that the actions of either defendant were performed under color of state law, and therefore plaintiff has failed to state a cause of action under 42 U.S.C. § 1983.

B. *42 U.S.C. § 1985(3)*

■ 42 U.S.C. § 1985(3) provides in pertinent part:

If two or more persons in any State or Territory conspire to go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and] one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Although § 1985(3) does encompass purely private action, *Griffin v. Breckenridge,* 403 U.S. 88, 96–102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court has made it clear that

[t]he language [in § 1985(3)] requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the

equal enjoyment of rights secured by the law to all.

*Id.* at 102, 91 S.Ct. at 1798 (footnotes omitted); *Bethel v. Jendoco Construction Corp.,* 570 F.2d 1168 (3d Cir. 1978); *Kunda v. Muhlenberg College,* No. 77–1955 at 3 (E.D. Pa., filed April 20, 1978).

As our learned colleague, Judge Van Artsdalen, stated:

Although a conspiratorial allegation is presented, plaintiff has not alleged that defendants' actions were generated by some racial or otherwise class-based animus within the meaning of *Griffin v. Breckenridge.* More importantly, though, plaintiff has not alleged the deprivation of any right, privilege or immunity to which Section 1985(3) affords protection. Neither plaintiff nor any other automotive component "inventor-entrepreneur" has a federally guaranteed right to have his business proposals accepted and financed by private automotive companies. To the contrary, the Supreme Court has long recognized the right of private companies, in the absence of any purpose to create or maintain a monopoly, to freely choose the parties with whom they will deal. *United States v. Colgate & Company,* 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (1919). The claim under Section 1985(3) will therefore be dismissed.

*Raitport v. General Motors,* No. 73–2054 at 5 (E.D.Pa.1975); *aff'd,* 547 F.2d 1163 (3d Cir. 1976), *cert. denied,* 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977). *See Flesch v. Eastern Pennsylvania Psychiatric Institute,* 434 F.Supp. 963, 979–980 (E.D.Pa. 1977); *Everett v. City of Chester,* 391 F.Supp. 26, 29 (E.D.Pa.1975); *Droysen v. Hansen,* 59 F.R.D. 483, 484 (E.D.Wis.1973). Plaintiff has not alleged the deprivation of a right, privilege or immunity to which § 1985(3) affords protection. Accordingly, he has failed to state a cause of action under 42 U.S.C. § 1985(3).

C. *15 U.S.C. §§ 1, 2 and 3*

Plaintiff's antitrust complaints boiled down to the fact that defendants have acted unlawfully in refusing to accept plain-

tiff's proposal for a new switch. Plaintiff contends that his proposed switch is better and more economical than the switches currently used by defendants, and that defendants have refused to deal with him because they are trying to discourage new entries into the field of automotive engineering to eliminate potential competition.

■ A private manufacturer has the right to select those customers with whom it will deal so long as its choice not to deal with a particular party is not used as a means of suppressing competition. *United States v. Arnold, Schwinn & Co.,* 388 U.S. 365, 376, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967); *United States v. Parke, Davis & Co.,* 362 U.S. 29, 37, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); *United States v. Colgate & Co.,* 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (1919); *Dillon Materials Handling, Inc. v. Albion Industries,* 567 F.2d 1299, 1306 (5th Cir. 1978). This is true even if that supplier offers the best or most economical components available. *See United States v. Colgate & Co.,* 250 U.S. at 307, 39 S.Ct. 465. Thus, even if plaintiff could establish that his proposed switch was in fact the best and most economical switch available to the defendants, this fact alone would not render defendants' refusal to deal unlawful. *Raitport v. General Motors,* No. 73–2054 at 10 (E.D.Pa., filed May 28, 1975), *aff'd,* 547 F.2d 1163 (3d Cir. 1976), *cert. denied,* 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977). Plaintiff has alleged two separate legal grounds for relief based upon the antitrust laws: (1) Conspiracy and (2) Monopoly.

### (1) Conspiracy Theory

■ To recover on his theory of a concerted refusal to deal, plaintiff must prove that a conspiracy in fact existed between the defendants to refuse plaintiff's proposal. Although evidence of a formal agreement is not required to prove a Sherman Act conspiracy, *Interstate Circuit, Inc. v. United States,* 306 U.S. 208, 226–27, 59 S.Ct. 467, 83 L.Ed. 610 (1939), plaintiff must show more than mere conscious parallel action between the defendants. *Theatre Enterprises, Inc. v. Para-Mount Film Distributing Corp.,* 346 U.S. 537, 540–541, 74 S.Ct. 257, 98 L.Ed. 273 (1952); *Bogosian v. Gulf*

*Oil Corp.,* 561 F.2d 434, 446 (3d Cir. 1977); *Venzie Corp. v. United States Mineral Prod. Co., Inc.,* 521 F.2d 1309, 1314 (3d Cir. 1975); *Klein v. American Luggage Works, Inc.,* 323 F.2d 787, 791 (3d Cir. 1963); *Delaware Valley Marine Supply Company v. American Tobacco Company,* 297 F.2d 199, 202–203 (3d Cir. 1961), *cert. denied,* 369 U.S. 839, 82 S.Ct. 867, 7 L.Ed.2d 843 (1962); *Raitport v. General Motors,* No. 73–2054 at 11 (E.D. Pa., filed May 28, 1975), *aff'd,* 547 F.2d 1163 (3d Cir. 1976), *cert. denied,* 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977).

■ Plaintiff has alleged by affidavit that his business proposal was similarly rejected by both American Motors and Ford. There is nothing to indicate that his parallel business behavior was the product of any agreement, tacit or express, between the defendants to refuse to deal with the plaintiff other than plaintiff's affidavit in which he states his basic theory that the automotive companies are engaged in a conscious conspiracy to prevent new competitors from entering the field of automotive component manufacture and that his proposal was rejected in accordance with this conspiratorial policy. Plaintiff offers no further explanation of the details of this conspiracy other than the assertion that the conspiracy is formulated and executed at the management level by the heads of Ford and American Motors.

In the affidavits submitted on behalf of Ford, the affiants attest that the decision to reject the plaintiff's proposal was made unilaterally by them, and that in making the decision, they did not communicate with any person in the employ of or acting for GM, Chrysler or American Motors, or any other person employed outside Ford, nor did anyone from this group have any communication or discussion with Ford concerning Mr. Raitport or any of his inventions. The affiants further state that the plaintiff's proposals were rejected on the basis of their own business judgment. The affidavits submitted on behalf of American Motors (as do the affidavits submitted on behalf of GM and Chrysler) attest to the same facts.

Plaintiff has had more than ample opportunity to conduct discovery in this action. In addition, he has had the unusual benefit of testing the sufficiency of his legal theories before both Judge Van Artsdalen and our Third Circuit in the previous litigation; and yet, plaintiff has offered only unsubstantiated conspiratorial allegations in support of his claims. We find that plaintiff's unsubstantiated conspiratorial allegations are insufficient to withstand a motion for summary judgment at this stage of the litigation. *First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–90, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Proctor v. State Farm Mutual Automobile Ins. Co.,* 561 F.2d 262, 275 (D.C.Cir.1977); *Solomon v. Houston Corrogated Box Co.,* 526 F.2d 389, 393–94 (5th Cir. 1976); *Rodrigue v. Chrysler Corp.,* 421 F.Supp. 903, 906 (E.D. La.1976); *Raitport v. General Motors,* No. 73–2054 (E.D.Pa., filed November 12, 1975), *aff'd,* 547 F.2d 1163 (3d Cir. 1976); *cert. denied,* 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977). As stated by the Supreme Court in *First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. at 288–90, 88 S.Ct. at 1592–1593:

It is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial. The case at hand presents peculiar difficulties because the issue of fact crucial to petitioner's case is also an issue of law, namely the existence of a conspiracy. What Rule 56(e) does make clear is that a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him. Yet the analysis of the facts undertaken above demonstrates that, due to the absence of probative forces of Cities' failure to deal with Waldron as being in itself evidence of conspiracy, petitioner's position is, in effect, that he is entitled to rest on the allegations of conspiracy contained in his pleadings. Thus petitioner repeatedly states that Cities has never disproved its participation in the alleged conspiracy, despite the fact that the only evidence of such participation is his allegation that the failure to deal resulted from conspiracy. . . . While we recognize the importance of preserving litigants' rights to a trial on their claims, we are not prepared to extend those rights to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint. (footnote omitted).

(2) *Monopoly Theory*

■ With respect to plaintiff's allegations that defendants refused to deal in order to promote their monopolistic positions, plaintiff must establish that such a monopolistic purpose in fact existed. *Coleman Motor Co. v. Chrysler Corp.,* 525 F.2d 1338, 1348 (3d Cir. 1975); *Raitport v. General Motors Corp.,* No. 73–2054 (E.D.Pa., filed May 28, 1975), *aff'd,* 547 F.2d 1163 (3d Cir. 1976), *cert. denied,* 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977).

■ The affidavits submitted on behalf of Ford and American Motors (as do those submitted on behalf of GM and Chrysler) state that plaintiff's proposal was refused because the switch did not satisfy production requirements, and that their decision not to deal with the plaintiff was the product of their independent business judgment. Plaintiff's affidavits assert that his proposed switch is superior in quality and cost to the switches currently used by defendants and that defendants refused his proposal in furtherance of their policy to monopolize the automotive component market. As the Court heretofore found in connection with plaintiff's affidavits concerning conspiracy, plaintiff has had more than ample opportunity to conduct discovery in this action and has had the unusual benefit of testing the sufficiency of his legal theories

before both Judge Van Artsdalen and our Third Circuit. The plaintiff's affidavits concerning monopoly are likewise no more than conclusory and unsubstantiated allegations in support of his claim and are insufficient to raise a genuine issue of material fact such as would require a court to deny a motion for summary judgment.

The Court finds that this case presents no genuine issue of material fact, and for the reasons heretofore set forth, summary judgment will be granted in favor of Ford and American Motors on plaintiff's antitrust claims. As stated earlier in this memorandum, summary judgment will likewise be entered in favor of General Motors and Chrysler on the ground of res judicata. Accordingly, this Court will enter an Order granting summary judgment in favor of all defendants and against the plaintiff.